**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH TUCKER, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.   05 C 5708** |
| **v.** | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | **HONORABLE DAVID H. COAR** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph Tucker, Sr. ("Tucker") applied for disability insurance benefits ("DIB")

from the Social Security Administration ("SSA").  After the SSA denied his application and his

reconsideration request, Tucker requested and received a hearing.  The Administrative Law

Judge ("ALJ") who conducted the hearing concluded that Tucker was not disabled.  After the

Social Security Appeals Council denied Tucker's request for review, he sought judicial review of

the ALJ's decision.  Tucker and the SSA Commissioner, Jo Anne Barnhart ("Commissioner"),

have filed cross-motions for summary judgment;[1] Tucker seeking to reverse or remand the ALJ's

decision, the Commissioner seeking affirmance.  For the reasons discussed below, this Court

denies Tucker's motion for summary judgment and grants the Commissioner's motion for

summary judgment, thereby affirming the ALJ's decision.  The Court reaches this conclusion

---

[1] This Court has reviewed the entire docket and has not found an actual motion for
summary judgment filed by Tucker.  However, the Court will accept Document [18] entitled
"Memorandum In Support of Plaintiff's Motion for Summary Judgment or Remand" as having
been made by motion and will rule on it accordingly.

with great reluctance because Tucker obviously suffers some limitations due to his health impairments.

## I. RELEVANT FACTS[2]

**Tucker's Testimony at the Hearing[3]**

Joseph Tucker, Sr. was born on May 21, 1942. He is married and lives with his wife, his youngest son and three grandchildren that he and his wife raise as their own. He is a resident of Evanston, Illinois, located in the northern part of Cook County. Tucker completed high school. For approximately twenty years, Tucker worked as a line supplier, dock worker and forklift operator at Avon, performing manual labor. He worked there until September of 2001, when he had heart bypass surgery. Tucker tried to return to work after he recovered from the surgery but was unable to perform his previous duties. Tucker has not held any other job since leaving Avon.

Tucker lives on the second floor of an apartment building where he uses stairs for ingress and egress. He sometimes walks his grandchildren to a bus stop, waits for the bus to arrive and then walks home. He can stand for at least a half-hour. He also periodically walks to his brother's home, which is three city blocks from his home. Tucker also occasionally drives to friends' homes to visit. Tucker does not engage in any heavy lifting at all. Although he goes grocery shopping with his wife, his son brings the groceries into the apartment. Tucker sings in

---

[2] Unless otherwise noted, all facts are taken from the certified copy of the administrative record filed with this Court.

[3] This testimony is entirely consistent with the information provided by Tucker in his Activities of Daily Living Questionnaire prepared on December 16, 2002.

a choir and attends church for two hours every Sunday.  He has stopped watching sports so as to avoid stress from the excitement.

**Tucker's Medical History**

In September of 2001, Tucker underwent extensive bypass surgery to stabilize triple vessel coronary artery disease.  The surgery was successful and Tucker was released in a stable condition on October 2, 2001.  At the time of release, Tucker had been diagnosed with coronary heart disease, stenosis, hypertension, unstable angina and other impairments.  In June of 2002, Dr. Campbell, Tucker's treating physician, indicated that Tucker was functioning well and could return to work without major restrictions.  In January of 2003, Dr. Campbell noted that Tucker's coronary heart disease was stable, that he had two herniated discs in his back, but that he should continue daily exercise and conditioning.  In February of 2003, Tucker underwent a consultative examination ("CE") conducted by Dr. Raymond, who found that Tucker suffered from no symptoms other than shortness of breath associated with ascending stairs.  One month later, state-employed physicians, Drs. Kim and Rock Oh, completed a residual functional capacity ("RFC") based upon the report of the CE.  They opined that Tucker was capable of medium work.

In September of 2003, Dr. Campbell completed a cardiac RFC assessment questionnaire.  He labeled Tucker's diagnosis as "Class II" and his prognosis as "guarded."[4]  Dr. Campbell noted that Tucker suffered from chest pain, anginal equivalent, fatigue, weakness as well as marked limitation of physical activity.  He also noted that in his opinion, Tucker was incapable

---

[4] Class II corresponds to patients who display slight, mild limitation of activity; they are comfortable with rest or with mild exertion.  New York Heart Association Classification, November 13, 2006, http://www.hcoa.org/hcoacme/chf-cme/chf00070.htm.

of even low-stress jobs and that his physical symptoms and limitations caused emotional problems as well. At one point, Tucker was prescribed Lipitor, a cholesterol lowering drug, but now he only takes low dosage aspirin daily for his heart condition.

## ADMINISTRATIVE LAW JUDGE HEARING

### Vocational Expert's Testimony

A vocational expert ("VE"), Linda Gels, testified at the hearing. The VE stated that she had reviewed the record of Tucker's vocational history made available to her. She identified Tucker's occupation of line supplier as being most analogous to the occupation of material handler as described in the Department of Labor's "Dictionary of Occupational Titles" ("DOT"). The VE described the position as a "heavy occupation" with a Specific Vocational Preparation Rating ("SPV") of 3.[5] She further stated that his skills were not transferable to "light" jobs.

In response to a hypothetical question put to her by the ALJ, the VE stated that in her opinion, Tucker could perform the duties of other occupations including order filler, hand packager and machine feeder tenderer. These jobs were "medium" jobs and in the VE's estimation and Tucker would be able to perform the duties of either of the three positions given his age, education, work experience and exertional limitations.[6] The VE also stated that approximately 25,000 to 30,000 of these jobs existed in the surrounding area of Cook County,

---

[5] SPV is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C (4 ed., Rev.1991).

[6] Those exertional limitations included frequently lifting and carrying up to twenty-five pounds, occasionally up to fifty pounds; sitting from six to eight hours a day; standing and walking at least six hours a day; and occasional climbing.

Illinois, with the caveat that if one had to lay down during the workday none of the positions would be available. Finally, she stated that the evidence she provided did not conflict with the DOT.

**The Administrative Law Judge's Decision**

To determine whether Tucker was disabled as defined in the Social Security Act, the ALJ conducted a standard five-part inquiry. <u>See</u> 20 C.F.R. §404.1520. This required the ALJ to evaluate:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

<u>Knight v. Chater</u>, 55 F.3d 309, 313 (7th Cir.1995) (quoted in <u>Clifford v. Apfel</u>, 227 F.3d 863, 868 (7th Cir. 2000)). An answer of "no" at any step, except Step 3, ends the inquiry and results in a finding that the claimant is not disabled. <u>Zalewski v. Heckler</u>, 760 F.2d 160, 162 n.2 (7th Cir. 1985) (citation omitted). The claimant bears the burden of proof through step four; but at step five the burden shifts to the Commissioner. <u>Knight</u>, 55 F.3d at 313.

In conducting the sequential analysis, the ALJ found that Tucker had not engaged in substantial gainful activity that would disqualify him under the first step of the inquiry. In the second step of the inquiry, the ALJ found that Tucker had severe impairments, which significantly limited his ability to perform basic work activities. However, the ALJ found that none of Tucker's impairments, either singly or in combination, was severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. §404, Subpart P, Appendix 1.

The ALJ then considered whether Tucker had sufficient residual functional capacity ("RFC") to perform his past relevant work or other work existing in significant numbers in the national economy. She found that Tucker's impairments precluded the following work activities: 1) lifting more than fifty pounds occasionally and twenty-five pounds frequently; 2) standing and/or walking for more than a total of six hours in an eight hour workday; 3) sitting for more than a total of six hours in an eight hour workday; and 4) ascending stairs or ramps more than occasionally.

While determining the applicable RFC, the ALJ considered Tucker's anecdotal allegations in detail in her decision. She also considered the medical evidence, which she determined did not support a more restrictive RFC (meaning Tucker was less limited as he claimed). In considering the medical evidence, the ALJ acknowledged facts that supported both a more restrictive RFC and a more liberal RFC. Those facts included Tucker's medical history; the findings of the CE; the findings of Dr. Campbell, Tucker's treating cardiologist; and the recommendations of the physicians employed by the State Disability Determination Services. She also discussed the weights given to the various medical evidence.

The ALJ's decision demonstrates that she weighed the past medical evidence in the record, the factors listed in 20 C.F.R. §404.1529(c)(3) such as Tucker's daily activities, living conditions, past and present treatments and the type of pain and symptoms from which he suffers, as well as the evidence supplied by the various physicians. She included in her decision explanations of how she weighed the credibility of Tucker's testimony at the hearing, and how she weighed the evidence supplied by Dr. Raymond and Dr. Campbell. The ALJ noted that she did not afford Dr. Campbell's opinion as much weight as a treating physician's opinion would

usually command. She reasoned that because Dr. Campbell's opinion that Tucker was disabled was inconsistent with other evidence in the record and even his own treatment records, it was not entitled to the weight usually afforded.

The ALJ also found that Tucker's allegations of disability lacked credibility based on a number of factors. First, all of Tucker's doctors found that he essentially had no limitations. Second, Tucker's treatment has been generally successful in controlling his symptoms. Third, Tucker's use of medication did not suggest a limitation greater than any determined to exist in the RFC. Fourth, Tucker described daily activities that were not as limited as they should be for someone claiming a disability and limitations as severe as Tucker is in these proceedings.

In the fourth step of the sequential analysis, the ALJ found adopted the VE's determination that Tucker could not still perform his past relevant work as a line supplier. Lastly, she determined that the Commissioner had indeed shown that there existed sufficient jobs in the Cook County area that Tucker was qualified and physically capable of performing.

In her findings section, the ALJ found the Tucker's allegations about his limitations "not entirely credible for the reasons set forth in the body of the decision." In addition, she found that Tucker "has the residual functional capacity to lift and carry (or push/pull) up to 25 pounds frequently and 50 pounds occasionally and to sit, stand, and walk up to 6 hours of an 8-hour workday. Although she found that Tucker could not perform any past relevant work, she found that between 25,000 to 30,000 jobs existed in the local economy, the metropolitan Chicago area, which Tucker could perform. In conclusion, the ALJ determined that Tucker was not under a disability as defined in the Social Security Act and was not entitled to DIB. Tucker sought

review of the ALJ's opinion from the Appeals Council. The request for review was denied on August 11, 2005.

## II.     STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The district court will uphold an ALJ's decision as long as the ALJ's findings of fact are supported by substantial evidence and there are no errors of law. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000) (citing Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The district court reviews the entire administrative record, but does not reweigh evidence, resolve conflicts, decide credibility questions, or substitute its own judgment for that of the Commissioner. Clifford, 227 F.3d at 869. This is a "deferential, but not entirely uncritical" standard of review, because the ALJ's decision will not stand "if it lacks evidentiary support or [contains] an inadequate discussion of the issues." Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003).

Thus, the district court will affirm the decision if it is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimant's position. See 42 U.S.C. §§ 405(g), 1383(c)(3). Nevertheless, in making his decision, the ALJ must articulate some minimal basis for the conclusions that he reaches so that the reviewing court may "trace the path" of the ALJ's reasoning. See Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995). Lastly, although the ALJ may credit certain evidence and discredit other evidence, he may not simply ignore evidence favorable to the claimant in articulating the basis for his decision. See Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998).

## III.   ANALYSIS

**Allegations of Error**

Tucker alleges that the ALJ's decision is not based upon substantial evidence and contains errors of law.  Specifically, he alleges that the ALJ made an erroneous finding of RFC. Tucker alleges further that if the correct RFC had been determined, his age would have automatically resulted in a finding of disability under Grid Rule 202.06.  Tucker also alleges that the ALJ committed an error of law while making a credibility finding because she ignored Social Security Rule ("SSR") 96-7p and 20 C.F.R. §404.1529 while doing so.  Finally, Tucker asserts that the ALJ committed legal error in both her application of the Medical-Vocational Guidelines in her determination of no disability and her performance of step five of the sequential analysis. Tucker seeks a reversal of the ALJ's decision pursuant to sentence four of 42 U.S.C. §405(g) and an award of benefits, or in the alternative, a remand for further proceedings in accordance with this Court's decision.  The Commissioner denies that the ALJ committed an error of law or failed to support her findings with substantial evidence.  Accordingly, the Commissioner requests this Court to affirm the ALJ's decision that Tucker is not entitled to DIB.

### A.   THE RESIDUAL FUNCTIONAL CAPACITY FINDING

Tucker alleges that the ALJ's determination of RFC was erroneous for several reasons. First, he contends that the ALJ improperly dismissed Dr. Campbell's cardiac RFC assessment questionnaire, which encapsulated his opinion that Tucker was indeed disabled and severely limited in the type of work he could perform.  Second, he argues that the ALJ failed to request an RFC or Medical Source Statement ("MSS") from the CE, despite being required to do so by 20 C.F.R. §404.1514n.  Third, Tucker complains that the ALJ failed to recontact Dr. Campbell as

required by Social Security Rule 96-5p.  Fourth, Tucker alleges that the ALJ failed to determine the skill level of work to which he was limited.

The ALJ did consider Dr. Campbell's opinion.  In her decision, the ALJ specifically noted that although she declined to give it the weight normally afforded to the opinion of the treating physician, Dr. Campbell's opinion was still being considered.  Regulations provide that a treating physician's opinion should generally be provided great weight.  20 C.F.R. §404.1527(d)(2).  The ALJ declined to do so in this case.  The law provides that a "treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight *if it is well supported by medical findings and not inconsistent with other substantial evidence in the record*."  Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) (emphasis added).  "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."  Id.

Here, the ALJ pointed to substantial evidence in the record which tended to negate the assertion of Dr. Campbell that Tucker was disabled.  The findings of Dr. Raymond and the state-employed physicians, even the testimony and daily activities questionnaire provided by Tucker, as well as Dr. Campbell's own treatment records all contradicted the opinion of Dr. Campbell that Tucker was as severely limited as he claimed to be.  In Gudgel, the court noted that the ALJ did not bother to explain how the opinion of the treating physician contradicted the other evidence in the record.  345 F.3d at 470.  Here, to the contrary, the ALJ discussed how Dr. Campbell's opinion differed with the findings of Dr. Raymond, the state-employed doctors, even

the testimony and daily activities questionnaire provided by Tucker.  The ALJ also explained how Dr. Campbell's opinion was inconsistent with his own prior treatment records.

Tucker claims that the ALJ's explanation was insufficient and did not specify the nature or extent of the inconsistency.  Dr. Campbell found that Tucker could return to his job as a line supplier, a job described by the VE as heavy work.  He later found that he could not even perform low-stress work.  Such a divergence in opinion seems to be an inconsistency even a lay-person could identify, especially given that Tucker's prescription treatments have gone from Lipitor to only low dosage children's aspirin; all of which was discussed by the ALJ.

Tucker counters that when there is an inconsistency or contradiction between the record and the treating physician's opinion, the ALJ is required to attempt to recontact the treating physician to reconcile the inconsistency.  In <u>Barnett v. Barnhart</u>, while citing to 20 C.F.R. §404.1527(c)(3), the Seventh Circuit instructed that an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.  381 F.3d 664, 669 (7th Cir. 2004).   20 C.R.F. §404.1527(c) states in relevant part:

> (2) If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.
>
> (3) If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we

already have.

Thus, the ALJ is not actually required to recontact the treating physician in an effort to reconcile any inconsistencies *where there remains sufficient evidence in the record from which the ALJ can determine disability.*  Here, other sufficient evidence existed in the record and the ALJ discussed and weighed that evidence along with Dr. Campbell's opinion.

**Lack of a Medical Source Statement or RFC from the Consultative Expert**

Next, Tucker argues that it was legal error for the ALJ not to request an MSS or an RFC from the CE.  He cites 20 C.F.R. §404.1514n and SSR 96-5p as the sources of these requirements.  However, this Court has not found any such section enumerated 404.1514n in its review of 20 C.F.R. §404.1501 *et. seq.*  In fact, this Court's review of the afore-mentioned regulations along with SSR 96-5p, reveals that neither the CE, nor an MSS or RFC from the CE are actually required at all, but rather they are only necessary when there is no otherwise sufficient medical evidence from which to make a determination of disability.  20 C.F.R. §404.1501 *et. seq.*; SSR 96-5p, available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html (November 13, 2006).  SSR 96-5p only applies to treating sources, not consultative examiners.  Obviously, Dr. Raymond was not a treating source.

**The Finding That Tucker Can Perform Medium Work**

Tucker also contends that the ALJ's finding that he can perform medium work is erroneous as there was no basis for the finding that Tucker could lift as much as twenty-five pounds frequently and fifty pounds occasionally.  The ALJ clearly relied upon the report of the CE, Dr. Raymond, and the RFC assessment of Dr. Kim and Rock Oh in determining RFC.  The

question is whether she was entitled to do so. Dr. Raymond is an internist, and neither Dr. Kim or Dr. Rock Oh treated or examined Tucker.

As previously mentioned, the regulations direct an ALJ to generally afford treating physician's opinions great weight. 20 C.F.R. § 404.1527(d)(2). They also direct ALJs to generally give specialists' opinions greater weight than non-specialists' opinions. 20 C.F.R. §404.1527(d)(5). But the regulations require the ALJ to give a treating physician's opinion controlling weight only if it is supported by objective medical evidence and consistent with other medical evidence in the record. Gudgel, 345 F.3d at 470. It is true that a contradictory opinion of a non-examining physician does not, by itself, support the rejection of a treating physician's opinion. Id. (citing Moore v. Barnhart, 278 F.3d 920, 924 (9th Cir.2002)).

Here, it is obvious from the record that the ALJ accepted the exertional limitations as described by the government doctors in the RFC assessment, even though she mentioned Tucker's testimony that he was restricted to lifting between 35 - 40 pounds and not much walking. However, this is not a case of choosing a non-examining physician's opinion over a treating physician's opinion. Inexplicably, Dr. Campbell did not complete the RFC assessment questionnaire; skipping the crucial section concerning his opinions on Tucker's exertional limitations. Had Dr. Campbell's questionnaire been the only medical evidence before the ALJ, this Court would readily reverse and remand this action with an instruction to fully develop the record. However, the government doctors provided the record with exertional limitations on lifting, walking, standing and sitting that the ALJ relied on in fashioning her decision. It is troubling that neither Dr. Kim nor Dr. Rock Oh specifically provided how or why the evidence supported their conclusion, as requested, but not required, by the RFC assessment form. In

Section IV of the RFC assessment form, the physician merely repeated the findings of the CE, stated that he reviewed the entire file, and concluded that Tucker can perform medium work. Ultimately, although the state-employed physician's report is merely derivative of the CE, Tucker has not demonstrated that such report, or the CE for that matter, was not objective medical evidence sufficient for an ALJ to form a reasoned decision.

The absence of Dr. Campbell's opinion on exertional limitations and the lack of specific explanation as to how the state-employed physician arrived at his opinion of Tucker's exertional limitations suggest that the ALJ should have attempted to recontact Dr. Campbell. An ALJ must recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled. Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 1990); see 20 C.F.R. §404.1512(e). However, 20 C.F.R. §404.1512(f) instructs the claimant that if necessary evidence is not supplied pursuant to subsection (e), the agency may require a consultative examination. Thus, a consultative examination is one way a gap in necessary information, if any, may be filled. See 20 C.F.R. §404.1519a(b). Dr. Raymond performed a consultative examination in this case, the results of which were used by the state-employed physicians in the RFC assessment. In the History of Chief Complaints section of the CE report, Dr. Raymond wrote that the claimant (Tucker) only complained of exertional dyspnea while climbing stairs, nothing else. The state-employed physician relied on Dr. Raymond's report in reaching his own findings. The ALJ briefly discussed the weight she was attributing to the non-treating medical sources.

It seems appropriate to reiterate the standard of review applicable in cases such as these. A district court will review the entire administrative record, but it will not reweigh evidence,

resolve conflicts, decide credibility questions, or substitute its own judgment for that of the Commissioner. Clifford, 227 F.3d at 869. The ALJ here considered and weighed the relevant evidence available to her. The question is not whether every helpful piece of evidence was available to the ALJ but rather whether substantial evidence was available to determine if the claimant was disabled. Here, the ALJ had before her the findings of a CE and another state-employed physician, the treating physician's notes and opinion,[7] the testimony and the daily activities questionnaire of the claimant; all discussed and considered in her decision. While it is evident that the ALJ at times relied upon her own opinions and experiences several times, such reliance did not render her weighing of the evidence erroneous or deficient, nor did she substitute her own opinion as the medical opinion of a physician. In fact, any fact-finder must rely on his own understanding, knowledge and experiences when evaluating competing pieces of evidence and assessing credibility.

The Seventh Circuit has instructed that an ALJ need not discuss every piece of evidence in the record but must base his decision on all of the relevant evidence. In addition, the ALJ must articulate, even briefly, his analysis of the evidence. Herron v. Shalala, 19 F.3d 329, 333. If the ALJ rejects an entire line of evidence, she must provide a reason for that decision. Id. The ALJ explicitly mentioned that she was not rejecting any evidence, not Dr. Campbell's opinion nor Tucker's anecdotal evidence. The decision demonstrates that she engaged in a thoughtful

---

[7] Tucker takes issue with the ALJ's seeming reliance on the fact that Dr. Campbell did not fill out all of the information on the RFC assessment questionnaire as evidence of finding a less restrictive RFC. The ALJ would have been entirely justified to infer that Dr. Campbell's failure to provide answers to questions 16(a) through (l) was due to an inability to support such answers with any actual evidence from the record, which would have in turn, tended to make his opinion less credible and deserving of even less weight than she accorded it.

analysis and balancing of competing opinions.  The ALJ articulated a sufficient basis for her

finding of RFC such that this Court was able to trace a path from the relevant evidence to her

decision.  It was made after consideration of substantial evidence and not legally erroneous.

**B.     THE ALJ'S FINDING THAT TUCKER WAS ONLY PARTIALLY CREDIBLE**

Tucker challenges the ALJ's determination that he was only partially credible.  "An

ALJ's credibility determinations are given special deference, but the ALJ must still 'build an

accurate and logical bridge between the evidence and the result.'" Ribaudo v. Barnhart, 458 F.3d

580, 584 (7th Cir. 2006).  An ALJ is required to evaluate a claimant's subjective complaints in

determining whether he is disabled, see 20 C.F.R. §404.1529, considering both the objective

medical evidence, id. §404.1529(b), as well as information provided by the claimant, his treating

physician, or others, id. §404.1529(c).  The ALJ must also evaluate the credibility of the

claimant's testimony in light of his (I) daily activities, (ii) the location, frequency, and duration

of pain, (iii) precipitating and aggravating factors, (iv) the effects of medication, (v) treatment,

(vi) other measure used to relieve the pain, and (vii) other facts concerning functional

limitations. Id. §404.1529(c)(3).  Although the ALJ must give specific reasons for findings of

credibility, see Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002); Social Security Ruling

96-7p (1996) (available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html),

these findings are entitled to deference and will not be disturbed unless "patently wrong" in light

of the record, Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2001).

In Ribaudo, the court found that the ALJ negative assessment of the claimant's credibility

was not supported by the objective medical evidence.  Id.  There, the ALJ failed to specify the

objective medical evidence which he was considering, nor was the court able to discern which

evidence the ALJ used when analyzing the record. <u>Id</u>. Also, it appeared to the court that the ALJ never even assessed the medical evidence that supported the claimant's assertions. <u>Id</u>.

Here, the ALJ specifically assessed the medical evidence that supported Tucker's claims; Dr. Campbell's opinion and the exertional dyspnea noted in the CE. Furthermore, it is clear from the decision that the ALJ considered the CE finding (that Tucker was asymptomatic) as well as the non-examining state-employed physician's report.

Of the several factors that an ALJ must consider under 20 C.F.R. §404.1529(c)(3), the only factors not specifically mentioned in the ALJ's decision were the location, frequency, and duration of pain; precipitating and aggravating factors and the effects of medication. The ALJ did not discuss these factors because either Tucker did not complain of them or there was no basis to discuss them. While Dr. Campbell did mark on his questionnaire that Tucker suffered from chest pain, anginal equivalent, fatigue, weakness, marked limitation in physical functioning and an inability to perform even low-stress work, Tucker's hearing testimony shed little light, if any on the frequency and duration of his symptoms. As for aggravating factors, it is clear that ascending stairs and singing in the choir cause Tucker to experience fatigue and difficulty in holding notes, respectively. Lastly, it would have been of little probative value to discuss the effects of taking low dose aspirin. Ultimately, the ALJ's failure to discuss the afore-mentioned factors did not render her total analysis insufficient under 20 C.F.R. §404.1529(c)(3).

The ALJ did discuss and evaluate the other factors; factors that were actually relevant. Tucker contends that the ALJ put to much weight in the fact that Tucker's daily activities did not correspond to the activities of a person claiming to be as limited as he does. But the ALJ did not rely on the daily activities *solely* in arriving at her determination that Tucker's allegations of

limitations were exaggerated. She also considered the objective medical evidence, the treatment records, the prescribed medication, as well as the testimony of Tucker and his daily activities. Thus, the ALJ satisfied both SSR 96-7p and 20 C.F.R. §404.1529.

## C.    GRID RULE 202.06 AND TUCKER'S ADVANCED AGE

Tucker alleges that had the ALJ made a correct finding of RFC, he would have automatically have been found disabled under Medical-Vocational Guidelines. Tucker is probably correct in his assertion that a more restrictive RFC would have necessitated a finding of disability under the Guidelines. However, this argument is moot in light of this court's finding that the ALJ's finding of RFC was not erroneous and was made after consideration of substantial evidence.

## D.    THE ALJ'S FINDING THAT SIGNIFICANT JOBS EXISTED IN THE LOCAL ECONOMY

Lastly, Tucker alleges that the ALJ's determination at step five of the sequential analysis was unsupported by substantial evidence. In this step, the Commissioner bears the burden of proving that the claimant is capable of performing work existing in significant numbers in the national economy. In performing her analysis under step five, the ALJ relied heavily on the testimony of a VE. She stated that Tucker had an SPV of 3, that he had been performing "heavy" work and his skills did not transfer over to "light" work. The ALJ posed a hypothetical question to the VE that took into account Tucker's age, education, vocational background and RFC. The VE responded that Tucker could perform three occupations: machine feeder/tenderer, hand packager and order filler and that 25,000 to 30,000 of these positions existed in the local economy.

Tucker complains that the ALJ committed error when she relied on the testimony of the VE because it 1) did not contain the specific number of jobs within each individual category of occupation; 2) included DOT listings in her final number of significant jobs that corresponded to jobs having a higher skill level than jobs Tucker was determined to be able to perform; and therefore, 3) actually was inconsistent with DOT without a reasonable explanation.

The VE presented three occupations to the ALJ. Tucker is correct that the ALJ found that Tucker could not perform "heavy" work and had an RFC which allowed a limited range of medium work. He is also correct that some of the specific jobs within the general occupations may have had either an SPV higher than three or are characterized as "heavy" work. However, this court is not willing to accept that some of the jobs used in the VE's analysis were actually "heavy" work or had an SPV of greater than three because the ALJ interrupted the VE during her testimony and instructed her that she only wanted medium jobs with occasional climbing before the VE gave her final number of possible jobs.

This court disagrees with Tucker in that the step five determination was not supported by substantial evidence; it was, that evidence was just either incorrect or at a minimum, inconsistent and ambiguous. The ALJ specifically mentioned that she was using the guidelines as "frameworks for decision-making", not as the sole determinant of disability. She also relied on the testimony of the VE. So the question is really whether the ALJ committed legal error when she relied on the VE's testimony.

In Prochaska v. Barnhart, the Seventh Circuit held that when an ALJ relies on expert vocational evidence as substantial evidence to support a determination of nondisability, she must comply with SSR 00-4p and ask the expert how his testimony corresponds to the DOT and also

obtain a reasonable explanation for any discrepancy. 454 F.3d 731, 735 (7th Cir. 2006). SSR

00-4p actually uses the phrase "apparent conflict" instead of "discrepancy". Here, the ALJ

specifically asked the VE whether her testimony conflicted with the DOT and the SCO (Specific

Characteristics of Occupations).[8] She replied that it did not. The VE simply did not give clear

testimony as to which jobs under the three occupations she was relying on and in what numbers

those specific jobs occurred. The ALJ found in her decision that the 25,000 to 30,000 jobs was a

significant number. Obviously, it may have been harmful to Tucker if the VE included jobs that

she should not have included. The problem here is that unlike the ALJ in Prochaska who failed

to ask the question of consistency with the DOT, this ALJ did ask the question. Tucker's

attorney at the hearing should have asked the VE to clarify.

Prochaska only instructs that an ALJ has an affirmative duty to inquiry from a VE

whether his testimony conflicts with the DOT and to elicit explanations for apparent conflicts.

The holding of Donohue v. Barnhart is actually more applicable here. 279 F.3d 441 (7th Cir.

2002). In Donahue, the Seventh Circuit provides the answer to the question of whether an ALJ

can rely on the unimpeached testimony of a VE in fashioning his own decision. Donahue holds

that an ALJ is entitled to accept a VE's testimony when the VE's testimony is unquestioned,

even if it is later determined that testimony differs with the DOT. See id. at 447. Donahue states

"[r]aising a discrepancy only after the hearing... is too late. An ALJ is not obliged to reopen the

record. On the record as it stands-that is, with no questions asked that reveal any shortcomings

in the vocational expert's data or reasoning-the ALJ was entitled to reach the conclusion she

_____

[8] In the transcript of the hearing, the ALJ is recorded as asking about the SEO rather than
the SCO. (R. at 23).

did." 279 F.3d at 447.  <u>Prochaska</u> does not affect this aspect of the <u>Donahue</u> holding.  The ALJ made the necessary inquiry into the VE's testimony and Tucker's attorney's waiver of a chance to question the VE proved to be quite counter-productive and the source of any "error" that can be attributed to the step five analysis.  In short, substantial evidence, (the grids as a framework and the unimpeached VE testimony) supported the finding that a significant number of jobs existed that could accommodate Tucker's limitations.

## IV.    CONCLUSION

For the foregoing reasons, this Court **DENIES** Tucker's motion for summary judgment, **GRANTS** the Commissioner's motion for summary judgment, and thereby **AFFIRMS** the ALJ's decision as it was supported by substantial evidence and free from legal error.  This case is therefore dismissed.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **November 17, 2006**